I'd like to reserve two minutes for rebuttal. You may do so. Just watch the clock. This is Catherine Tassinari. I'm representing Karen Joly, the plaintiff. Unlike Mr. Wilbourn's client, Karen Joly, there's been no suggestion by anyone here of any characterological problems or exaggeration. No one has expressed any doubt. None of the providers have expressed any doubt as to the extent of her pain. Karen Joly is disabled by cervical and lumbar back pain. Despite this, she's attempted to keep working and has worked. And she's a formerly very active person, I think we can see from the record. And she's kept active, but as time has passed, it's become more and more difficult for her to maintain. There are two big areas of contention here. I'd like to point out at the beginning, though, that she has the full support of Dr. Rung, the treating rehabilitation specialist. Dr. Rung is the only examining or treating doctor to give an opinion as to plaintiff's ability to function in the workplace. What about the fact that she was found to have engaged in substantial gainful activity between July of 2004 and July of 2006? Your Honor, she did work during this time, but she worked with significant accommodations. And the V.E. testified that the job normally requires being on your feet all day. And she had accommodations because she was allowed to lie down both in the morning and in the afternoon. But did she ever raise the issue of the fact that her job had special circumstances that would make her work during the 2004-2006 period not substantial gainful employment? Your Honor, in the district court, she didn't raise a step one argument directly, but she did argue at page 15 of her opening brief at district court that she had had accommodations in this job. She raised it pretty obliquely, right? It was more oblique than it could have been, I would say that. Isn't that a problem? Well, Your Honor, let's say that she did engage in SGA during this period of time. It doesn't answer necessarily what happens after that period. She was ‑‑ she stopped working. The reason she was working for this woman is that it was a friend of hers who was at the end of her life and so forth. So it's not another job she could find. And according to the V.E., that's not the job. The job is that you're on your feet all day.  She was compensated, was she not? She was, Your Honor. So even if we say that she was doing SGA for that period, certainly the court can award benefits after that period of time. She did not ‑‑ she worked very part time for a very short period. She was working 10 hours a week. And the record shows increasing, I think if you follow my chronology and the statement of facts, she reports increasing discomfort and just all the way along there, particularly in December of 2006 and January of 2007. If there was substantial gainful employment, when can disability start? When she's ‑‑ in June, I think, well, the courts, the ALJ said I think it was July of 2006. A critical date for the claimant is that she was insured through June of 2007. So if she's to receive Title II benefits, she has to show disability before that point. Wasn't she working as a part time caregiver through December 2006? She was working 10 hours a day ‑‑ excuse me, 10 hours a week. And the ALJ did not find that that was substantial gainful employment. If we look at the treating physician, it seems to me that we have to give controlling weight to what the doctor said unless not consistent with other substantial evidence. And, of course, the ALJ has to give us reasons for not accepting the treating physician's opinion. Here, the ALJ says that he does not accept the treating physician's opinion because the treating physician only recites the claimant's words. Had not seen the claimant in one and a half years as of November 2003. Then was medically stable, able to care for the patients who require minimal lifting and transfer assistance. And in May 2005, that there was no evidence of worsening since the 2003 in the record. Your Honor, none of those are correct. The most obvious is, yes, she worsened, because in 2003, when Dr. Rung saw her ‑‑ Isn't that what's in the record? Pardon me? Isn't that what's in the doctor's record? Whether it's correct or not, the doctor suggested that was the way it was. Well, the doctor in her ‑‑ in the 2005 examination, in 2003, she had only examined the cervical back. In 2005, she had seen that the claimant had a herniated lumbar disc, which the ALJ finds to be a marked degenerative impairment. So clearly, there's just so obvious objective evidence that her condition had totally changed. She hadn't even looked at her lumbar problem in 2003. And it wasn't just that she had seen her after this break, but she also examined her and she found positive straight leg raising. She found absent reflexes of the ankle. And in the meantime, plaintiff had her MRI showing. I guess my worry is that if I'm going to overturn the ALJ, because it doesn't give enough credence to the treating physician's opinion, then I have to look at why the ALJ did not give credence to the opinion. And I read this clear and convincing reasons here coming from the medical record of the doctor itself, and I'm having a tough time knowing how I can, on substantial evidence grounds, overturn the ALJ's decision. Well, Your Honor, the ALJ, Dr. Rung said that she could work being able to lie down, taking frequent breaks throughout the day. And that was what was factually happening, according to the plaintiff's testimony. So the VE says that's not the job. That's not the way the job is performed in the economy. Counsel, you're down to about less than two minutes. All right. I'll reserve the rest. You may do so. We'll hear from the Commissioner. May it please the Court, Richard Morris on behalf of the Commissioner. I would like to address two primary issues, the issue of SGA and its use as past relevant work in this whole decision, and I would like to address Dr. Rung's opinion also. And I would like to note initially that the argument whether or not this was SGA was not raised below, nor was the issue of whether or not the past relevant work at Step 4, which is where the denial occurred, was a valid decision. So to the extent that Appellant is arguing that at the moment, that argument has been waived. But I would like to address some of those issues. The ability to do work in substantial gainful activity and as a past relevant work issue is an indicator of the ability to work. The argument that the VE said at the hearing, this type of job isn't going to be available in the national economy, doesn't matter. The national economy issue comes up only at Step 5 when we're looking at other types of work. And again, since this was not raised below, it was not specifically briefed, but there is a significant case law that addresses Step 4 as not dealing with work in the national economy. And the specific case, and I could submit this as a supplemental citation, is Barnhart v. Thomas, the Supreme Court case 540 U.S. 20, which was decided in November of 2003. In that case, we had an elevator operator who lost her job because the job went away. And the issue was, if that job wasn't generally available in the national economy, would she then qualify for disability? And in that case, the Third Circuit overturned the commissioner and awarded benefits. The Supreme Court affirmed the commissioner and reversed, stating that the commissioner's policy, as stated in the regulations, is that at Step 4 you only need to show that you're able to do your past work as it was actually performed or as it was generally performed. In that case and in this case, the work was as it was actually performed. It doesn't have to be in the national economy. It doesn't have to be available in a number of ways. What happens if, as of July of 2006, she's not able to perform that past work? Well, what happened there, her client, the woman that she was caring for, died. Right. And I'm certainly not making light of that. But when the reason for stopping work isn't because of disability, you could look at that as a matter of a credibility issue. She didn't stop work because her condition worsened. She stopped work because the job went away. Let's assume, though, just for the purposes of my understanding of the rules, let's assume that she was not able to work as of July of 2006. She was disabled as of that date. What's the consequence? Well, the consequence is two things. She may or may not be found disabled. The step four, the ability to engage in SGA in step four, is a decision that a person has the ability to do a certain type of work. Even when the job stopped in July of 2006, the ALJ found in this case she still had the ability to do that type of work. I understand that. I'm asking you to say if he didn't find that, what's the result? If he didn't find that, he would proceed to step five and look at whether or not there was any work in the national economy that a person could do. And assuming there wasn't? Assuming there wasn't, there would be a finding of disability. Starting? Pardon me? Starting when? Starting when she was no longer capable of performing SGA, which again I have to emphasize is not necessarily July 2006. I understand. It is when that ability is lost. So I do wish to emphasize that the VE testimony about how this work is performed nationally isn't relevant. Based on this Thomas V. Barnhart, the ability to perform that job as it existed in the economy, as she actually did it, I'm sorry, is what's important. I would also like to address Dr. Rung's opinion to some degree and point out what is a seeming contradiction there. The ALJ did cite three reasons why he did not accept Dr. Rung's opinion. One point I'd like to make is that Dr. Rung stated, and this is at 293, she believed the claimant could not work half-time or more. This was in May of 2005. At the time the statement was made, the claimant was in fact working more than half-time. Yes, it was 21 hours, but it was at substantial gainful activity levels, and that was the unchallenged finding by the ALJ. The second point I'd like to make about Dr. Rung's opinion is her belief in that it was because the claimant could not do any heavy lifting and couldn't engage in prolonged sitting, standing, and walking. Those limitations are all accommodated in the residual functional capacities assessment by the ALJ, who allowed for periodic changing of positions. I believe at the vocational hypothetical she said one hour for change. It was a limitation to light work. And the only thing that isn't per se accounted for in the RFC is the need to lay down periodically. But that was accommodated in the ability in that particular job that she was able to do. So even if Dr. Rung's opinion were credited, the claimant was able to do work with those. I guess in summary I would like to say this was a difficult case for the ALJ. We do have a Social Security claimant here who has obvious physical impairments and limitations. But as stated in Thomas B. Barnhart, there is a structure for determining Social Security disability, and that step four issue of is the person able to do their past work as they did it, in this case is the key and seminal issue. There are exceptions to that, are there not? That's a very interesting question. In the Thomas case, the decision which was written by Justice Scalia says at the end any legal rules or issues are going to have some type of inappropriate consequences or exceptions. But the Supreme Court upheld the Commissioner's interpretation of the regulations to say if you can do your past work and it is SGA, substantial gainful activity, you're not disabled. What if it's not substantial gainful activity? If it's not substantial gainful activity, it's not past relevant work, disability would not be denied except for if that were the case. Your feeling is that that issue should not be sent back because it was waived or not raised? That is correct, Your Honor. Are there further? I have nothing further. No questions from the bench. Thank you, counsel. We'll hear from Ms. Tassinari. Thank you. You have some reserved time. I'd like to point out, after Mrs. Bogart died, the record shows that there was worsening of plaintiff's condition that would make it more difficult. In fact, the medical record shows that she reported more difficulty working because even working at this very reduced rate for the more recent person she was caring for, she was having more difficulty even working only 10 hours a day. And some of the things that showed up when Dr. Rung examined her, she had markedly diminished right wrist extension and flexion. She had a positive straight leg raise. She had absent ankle jerks. Sensation was decreased above the ankle and on the right wrist. So there is a factual finding that of worsening upon which you could grant benefits. The other, after the 2006 job ended, the other thing is that don't we really have a problem if we go there with the one other factor that the I.J. weighed in on, and that was that he found the Petitioner incredible. Pardon me? He found that Petitioner's ‑‑ he discredited the Petitioner's testimony. I mean, the I.J. says, I don't know whether I give credit to the Petitioner's talking, the medical findings and continued employment were not consistent with her testimony about severity. The medications allowed her to work. And the work that she did seemed to contradict her testimony, which was caregiver, which doesn't relate to the after death activity. She mows lawns. She owned and cared for a horse. And she fixes fence posts. Now, that's what the ALJ said. I hope that I know that in my argument on credibility, I addressed all of those things, like the horses and all of that. That was back in 2003. Well, I understand. But all I'm suggesting is, in order to suggest that the ALJ's findings were not based on substantial evidence, we're looking at, what does the doctor say? What does the claimant say? What do others say? And in each one of those circumstances, the ALJ says, well, I don't certainly agree with the doctor, and here are my clear and convincing evidence. I don't even agree with the plaintiff. And here are my clear and convincing evidence about that. And now what you're arguing is, even though that finding may be true as to what happened before her patient passed away, I'm just a leap on to new ideas for the future. That's what you're arguing, isn't it? I don't see that, Your Honor. None of the reasons that the ALJ gave for rejecting the claimant were really valid. I mean, you know, the SGA argument is a pretty technical argument. The claimant was describing a job. And this is all from the claimant, by the way. There's nothing in the rec. You know, plaintiff is being quite forthcoming about this job.  And if the court holds that she can do the job, that she can do her past relevant work, then basically the court's saying that she can do a job where she can lie down twice a day, and the V.E. has testified that that is not a job in the national economy. So having you can do your past relevant work, but if your job is gone because the person you are caring for is dead, she'd have to find another friend who's terminally ill who would let her lie down twice a day. You know? I mean. I think we understand your argument, Counsel. Okay. Your time has expired. Right. Okay. Thank you. Thank you. The case just argued will be submitted for decision.
judges: Whyte, O'scannlain, Smith M.